CITY OF HATTIESBURG, TO USE OF COSTON, *v.* BEVERLY ET AL.

[86 South. 590. No. 21325.]

1 APPEAL AND ERROR. *Arrest. A city policeman is also a state officer, and may arrest without writ; finding on conflicting evidence is conclusive.*

A policeman of a city is also an officer of the state within the limits of the city, and may arrest a person without a writ or an affidavit for an indictable offense against the state committed in his presence, and it will not defeat the lawfulness of the arrest to show that such officer filed an affidavit charging the violation of a city ordinance, and did not file an affidavit charging a violation of the state law, provided the arrest was made in good faith for violating the state law; and, where the evidence is conflicting with reference thereto, the jury's verdict finding the arrest lawful will not be disturbed.

2. TRIAL.  *No reversal because one instruction, if standing alone, is erroneous.*

The instructions of the trial court as to the law of a case will be considered as a whole, one as limiting or modifying or supplementing others, and, when considered together as a whole, a verdict will not be set aside, or a judgment reversed, because one instruction, if standing alone, might be misleading and erroneous. This is true, where there are two counts in the declaration, to each of which separate instructions are directed. In such cases the instructions on one count on appeal will be considered with others given on the other count, and if, taken as a whole, they are not misleading, the verdict will· not be disturbed.

3. INTOXICATING LIQUORS.  *Mere fact of arrest does not make disclosures as to possession of liquor involuntary; verdict on conflicting evidence will not be disturbed.*

Where a person under arrest opens his baggage to police officers for inspection as to whether he has intoxicating liquors in his possession unlawfully, it is a question of fact, to be determined from all the circumstances, whether this was a voluntary act, and the fact alone that a person is under arrest will not make all disclosures involuntary. When the evidence is conflicting, and the facts leave the mind in doubt, the verdict of the jury will not be disturbed.

APPEAL from circuit court of Forrest county. HON. R. S. HALL, Judge.

Action by City of Hattiesburg, to the Use of A. B. Coston, against T. W. Beverly, a policeman of the city, and the United States Fidelity & Guaranty Company, as surety on Beverly's official bond. Judgment for defendants, and plaintiff appeals. Affirmed.

*R. L. Bullard,* for appellant.

Whether the plaintiff was arrested by Beverly for violating the statute against profanity was made an issue of fact before the jury.

I quote and adopt this as a better statement of the real issue than I could have made. The difficulty that Beverly finds himself in is that his evidence does not meet his side

of that issue. To give his evidence the most favorable interpretation possible for him, he arrested Caston for violating the city ordinance against profanity, and the issue on the first count ought never to have been submitted to the jury. He admits that it was not his duty to arrest for a violation of the city ordinance committed in his presence, and therefore it is no justification of the arrest, even if such is the fact. Counsel's legal instinct drives him to this, but here occurs the unique ingenuity of his fallacious argument. His contention is as follows:

Beverly, at the trial, put in issue the guilt or innocence of Caston on a charge of violating the statute against profanity; Caston was tried upon that charge and was by the jury found gulity. Since he was guilty it was the duty of any peace officer to arrest him. Beverly is a policeman. *Ergo,* it was Beverly's duty to arrest him. Since it was Beverly's duty to arrest him for violating the statute the court will presume that he arrested him for violating the statute, even while Beverly's testimony and all the evidence in the case contradicts such presumption. This is his argument precisely, and it is about as logical as that used by Sir John Falstaff from which he inferred that there was such a bond of sympathy between his noble self and those two fair dames the Merry Wives of Windsor.

The question of Caston's guilt or innocence was never at issue in the trial. He was not tried therein for violating the statute against profanity, and he was not found guilty of profanity. His guilt or innocence was not even material in determining Beverly's right to make the arrest, but the policeman's object in making it was. If he, in good faith arrested Caston for violating the statute, which he, in good faith and upon good reason, believed Caston was then in the act of violating, then the fact would justify the arrest, whether it turned out that Caston was guilty or not. An officer may arrest a guilty man and the fact of guilt be no justification for the arrest. He may arrest an innocent man and the fact of innocence be no ground of liability against the officer for making the arrest.

Thus we are brought back to the real issue as counsel first stated it in his brief. Whether the plaintiff was arrested by Beverly for violating the statute against profanity was made an issue of the fact before the jury.

Beverly has never yet said that he arrested Caston for violating the statute. If such had been the fact what must have been the charge that Beverly made against him pursuant to his purpose in making the arrest? What he then did is of a thousand times more probative force than anything he can now say. He declared then, by the charge he made against Caston that it was for violating the city ordinance. When asked by the chief of police, after they failed to find any whiskey, what charge he had against Caston such was his reply, and counsel confesses that arrest for such purpose is no justification of the act if without warrant. Even that charge was afterward dismissed. And to show counsel's inconsistency in another matter he tries here to justify the fact that he would not allow us to show that the city dismissed the charge because it had no evidence of Caston's guilt, even though Beverly was confessedly present at the time.

Since filing the brief in chief herein the case of *Branfil* v. *Byrd,* 84 So. 227, has been decided by this court. It must have escaped the attention of opposing counsel, for it completely answers his argument as to the second count. In that case the officer went without authority to search the premises of Mrs. Branfil. He had what he thought to be a warrant but it was void; having no other effect than if it had been a piece of blank paper in his hand. Mrs. Bramfil consented to the search, saying: "I was willing for them to go to every part." She even assisted them by showing them through. This court approved the act of the trial court in granting a peremptory instruction as to liability, saying in part:

"An officer undertaking to search the premises of a private citizen, armed with a warrant issued by an official of the city, cannot defend on the ground of consent to such search unless it appears that the consent was

freely given, and was not given because of his official authority or under color of process issued by an officer claiming to have authority. A citizen is not required as a condition of maintaining an action against unlawful searches and seizures to resist the officer."

This is precisely the contention we made at the trial that Beverly could not defend on the ground of consent, because such consent as was given was evidently given because of his official authority, and that Caston did not have to resist the officers.

Beverly's declared purpose was to search Caston's grip; look into it to see if the liquor was there which he had heard was there as he said. Such purpose was never abandoned. It was as an officer he made the demand, and as an officer he pursued his original purpose until he had fully accomplished it. When they reached the chief's office the first word Beverly said was that Caston had whiskey in his grip, that he had heard it. Then it was that Caston slung it up on the chief's desk, that inner court of the city's police power, and said, "if you think there is whiskey in there, look and see."

These facts are not only not denied by the appellee, they are the complete substance of the very claim he makes. It is his defense that he, by virtue of his official authority, compelled Caston to go with him; that he took both Caston and his grip to the very desk of the chief and there said, this man has got five quarts of whiskey in that grip, as was testified and assented to by him when he did not deny making the statement. It presents a stronger case than that of *Branfil* v. *Byrd*. Here Caston did resist until he was forced by the strong arm of the city's police power into the very heart of the lion's den. He resisted until he could resist no longer without resorting to force, and he could not fight the whole police department. As the only peaceable means of escape he said: "If you think there is any whiskey in there, look and see."

Such is the case, taking Beverly at his word. Such is the defense with which he met the case we made on the

second count and we say that it should never have been submitted to the jury to find anything but the amount of damages.

*D. E. Sullivan,* for appellee.

This case was tried on the issue made by the first count of the declaration that plaintiff was violating no law at the time of his arrest. At the close of the testimony plaintiff requested a peremptory charge to the jury to find for plaintiff on this count, notwithstanding he had raised the issue by his declaration that he was not violating the law, at the time of the arrest, and notwithstanding defendant had joined issue with him on this point and there was a sharp conflict between the testimony for plaintiff and defendant therein.

We submit the court correctly refused this instruction. The plaintiff cannot be permitted to base his case on one theory and try it on that theory and then get the jury charged on another theory not raised by the pleadings or considered on the trial.

Plaintiff argues that defendant should have carried him before a justice of the peace when the arrest was made and not before the mayor. The question is, did the defendant have the right to arrest plaintiff at the time and not where he carried plaintiff after the arrest. Where plaintiff was carried after the arrest can have nothing to do with the legality of the arrest. But it was not unlawful to take him to the mayor. Under section 167, Constitution of 1890, all civil officers are conservators of the peace and shall be by law vested with ample powers as such. The Mayor is a civil officer. See *Monnette* v. *State,* 91 Miss. 662.

Appellant now contends in his brief that the peremptory instruction should have been given on the first count for two reasons: First: Because the arrest was not made for a violation of law, a misdemeanor against Section 1295, Code 1906, but for an alleged violation of the city ordi-

nance. Second: That the defendant by his unlawful conduct provoked plaintiff into cursing, if he did curse.

As to the first proposition we have already called the court's attention to the fact that in plaintiff's declaration, he alleged, in order to show that his arrest without warrant was unlawful, that he was violating no law, and was neither accused or suspected of any misdemeanor.

The plaintiff did not sue the defendant for arresting him without warrant for violating a city ordinance against profanity; he sued defendant for arresting without warrant because he says he was not violating any law or ordinance. In other words, he was innocent of any crime against the state law or the city ordinance when arrested. He planted his case on this theory but when the jury upheld the officer in making the arrest on the ground that plaintiff was committing an indictable offense in the officer's presence; he shifts his ground and says that he was not arrested for violating the statute against profanity but was arrested for violating the ordinance against profanity. The statute and the ordinance against profanity are the same. The city of Hattiesburg adopted all the statute laws as to misdemeanors as shown by the ordinance introduced at the trial. How can the plaintiff say that he was not arrested for the statutory offense. The jury found that he had committeed the statutory offense of cursing in the officer's presence. The court cannot now say that plaintiff was not arrested for this offense, when the defendant testified that he arrested plaintiff for cursing in his presence.

When the statute and the ordinance are the same, as in this case and when the act is a violation of both statute and ordinance, we do not see how the court can conclude that the arrest was not made for the statutory offense.

It was the duty of the policeman to arrest without warrant for the statutory offense committed in his presence, but it was not his duty to arrest for a violation of the ordinance committed in his presence. The law presumes

that the officer did his duty, and it therefore presumes that he made the arrest under the statute.

If an arrest be made by an officer having both an illegal and a valid warrant, he is protected although he declared that the arrest was made under the invalid one; his liability depends on the sufficiency of his authority and not on his declaration. See *State* v. *Kirby*, 24 N. C. 201, cited in 19 Cyc., page 343. Plaintiff's second contention, made in his brief, as already stated is that defendant by his unlawful conduct, provoked plaintiff into cursing, if he did curse. This position was not presented by the pleadings and was not an issue in the trial of the case but is advanced now in the argument to avoid the effect of the proof on behalf of defendant that plaintiff was arrested for profanity, which proof the jury found to be true when it returned a verdict for the defendant.

Does the adoption of the ordinance against profanity deprive the policeman of the right to make the arrest for the statutory offense without warrant when committed in his presence? This is what plaintiff's contention amounts to.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, A. B. Caston, filed suit against T. W. Beverly, a policeman of Hattiesburg, and the surety on his official bond, on two counts—one count being for the unlawful seizure and search of a suit case belonging to and in the possession of Caston, without having obtained a search warrant so to do; and, second, for an unlawful arrest without warrant. There was a plea of the general issue as to each of said counts, and notice of special matter under the general issue. Under the notice of special matter under the general issue, the defendant gave notice that at the time of the alleged acts Beverly was a policeman of the city of Hattiesburg, and was advised by certain military police of Camp Shelby, who were on duty in the city of Hattiesburg, that the said Caston had in his

suit case in said city an unlawful quantity of intoxicating liquor, in violation of law; that the said Beverly, on being so informed, approached Caston and advised him to the effect that he (Beverly) understood that Caston had whisky in his suit case, in violation of the laws of the state of Mississippi, and requested him (Caston) to permit Beverly to look in the suit case for whisky; that at said time Caston was under the influence of intoxicating liquor, and when so approached by Beverly began to curse and swear profanely in a public place in the presence of two or more persons, setting forth the language used, and that then and there Beverly arrested Caston for profanity, and Caston was carried to the city hall for said offense, and on arrival at the city hall the plaintiff voluntarily opened his suit case and requested the chief of police to look in the suit case, if he thought Caston had intoxicating liquors therein; that the charge of profanity was docketed against Caston, and he was immediately discharged, upon making bond.

On the trial of the case the plaintiff's testimony, if believed by the jury, made a case for the plaintiff; but the testimony for the defendant showed that there was no seizure or search of the suit case, and that Caston was arrested for profanity in a public place, and that this is the only charge that was docketed against him. It was also testified that the plaintiff voluntarily opened his suit case, stating to the chief of police, in the presence of Beverly, that he could look in the suit case if he thought he had liquor. It was further testified for the defendant that the plaintiff was under the influence of intoxicating liquors, and that he refused to leave the city hall, and demanded a trial that night, which was refused, because the city held no court at night. It further appears from the evidence that the charge preferred against Caston in the city court resulted in a conviction by the police justice, and an appeal to the circuit court was taken, where the case was dismissed by the city, whereupon the present action was brought.

It is argued by the appellant that, inasmuch as Caston was under arrest at the time he was carried to the city hall, the opening of the suit case was not voluntary, but was under duress by reason of the fact that he was under arrest, and that there was nothing to go to the jury to show legally that the plaintiff permitted voluntarily the search of his suit case. It is also contended that, because the affidavit was made charging violation of a municipal ordinance, the arrest was unlawful; it being conceded that there was no warrant obtained.

The appellee contends that, if the policeman had a right to make the arrest under the state law, it is wholly immaterial whether he preferred a charge at all, and, if he did, whether it was preferred for violation of a municipal law, or whether for violation of a state law; that policemen are state officers, charged with the duty of conserving the peace and arresting for violation of state law amounting to indictable offenses committed in their presence, without obtaining a warrant.

The city of Hattiesburg has a general ordinance making all misdemeanors under the state law offenses against the city of Hattiesburg, but did not have a section authorizing policemen to make arrests for violation of city ordinances without warrant. As stated above, the evidence for the plaintiff and for the defendant is directly and hopelessly in conflict. Of course, conflicts in the evidence are for the jury.

It is contended for the appellant that this case is governed by *Letow* v. *U. S. F. & G. Co.,* 120 Miss. 763, 83 So. 81, in which we held that the general state statute did not authorize a police officer to arrest a person without a warrant for a violation of a municipal ordinance, even though committed in his presence; the city not having a special ordinance authorizing arrest without a warrant for violating a municipal ordinance. In that case the ordinance was not an offense under the state law, amounting to a misdemeanor. In the present case the charge of profane swearing in the presence of three or more persons in

a public place is a misdemeanor under the state law, and was also a violation of the municipal ordinance. This court decided in the case of *Monette* v. *State,* 91 Miss. 662, 44 So. 989, 124 Am. St. Rep. 715, that a policeman was a public officer of the state within the meaning of section 20 of the Constitution. It is also undisputed that the policeman is a conservator of the peace, and if the arrest was made for swearing profanely in the presence of three or more persons in a public place, as testified by the defendant, we think the arrest was lawful.

It is contended that a policeman cannot by his conduct provoke a person into violating the law, and then arrest without warrant, and escape liability for such act. The appellee says on this point:

"This is a novel defense. By this argument the plaintiff undertakes to justify his profanity by showing that he was provoked into making the profane declaration. Insulting words may justify assault and battery, and an assault with a deadly weapon may authorize the person assaulted to defend himself to the extent of taking human life if necessary; but neither the statute nor the moral law excuses profanity in a public place in the presence of two or more persons. The plaintiff did not have to curse, if the defendant did provoke him. Profanity did not do him any good. He could not protect or assert his rights by it. The English language furnishes a great variety of excellent words by which he could have expressed his feelings, if he was provoked by the defendant. He did not have to violate the statute and one of the Ten Commandments, because he was annoyed or provoked by the officer. A man cannot curse in self-defense."

The proposition that a man cannot curse in self-defense is rather a broad assertion. We have an illustrious example in Holy Writ, for when Jesus was under arrest preceding the crucifixion some of the crowd accused Peter of being also an offender, which he denied. He was accused a second time, and denied it a second time, and when he was accused a third time he began to curse and swear.

Whether the cursing constituted a defense at law on that occasion is not recorded, but the crowd did not arrest Peter and arraign him before the court. The writer, however, prefers not to commit himself fully upon this proposition, being an officer of the church as well as of the state. But the court below granted the appellant this principle, giving the following instruction:

"The court charges the jury that an officer cannot provoke another with the violation of law, and then justify an arrest of the person without warrant therefor. Therefore, if you believe from the evidence that the defendant willfully and unlawfully attempted to require Caston to submit his suit case to an unlawful search, and such willfully unlawful conduct of Beverly caused Caston to curse, then Beverly cannot justify his act in arresting Caston without warrant by the fact that he did curse."

So it is not up to us to determine judicially this question now.

It is earnestly contended that it was error for the court to give the following instruction:

"The court instructs the jury, for the defendants, if you believe from the evidence Caston cursed in a public place in the presence of two or more persons, one of whom was Beverly, a policeman, and that Beverly arrested him for such cursing, then under the law Beverly had the right, and it was his duty, as an officer of the law, to arrest Caston without a warrant, and it is the sworn duty of the jury to find a verdict for the defendants, and it is immaterial whether Caston was tried or not for such cursing, and whether he was acquitted or convicted."

It is contended that this instruction directed the jury to find a verdict for the defendant, if he cursed in a public place, regardless of the fact whether the suit case was searched, and whether such search was legal or not. The instruction, if taken alone, would be subject to this criticism; but when we take the instructions as a whole, and consider them as parts of a general charge, one part as supplementing or modifying another, we think it does not

constitute reversible error. In the preceding instruction for the defendant the court dealt with the unlawful seizure and search proposition, and put it to the jury fairly as to whether the suit case was opened voluntarily or not; and especially when it is considered in connection with the plaintiff's charges, it is hard to believe that the jury were misled to the plaintiff's prejudice.

It is true, no doubt, that a person under arrest charged with an offense might be induced or coerced through his fear to do something which he would not do under other circumstances. But it is also true that a person under arrest may voluntarily do an act which the law would not compel him to do, and the fact simply that he was under arrest would not make all of his acts while under arrest involuntary. Whether an act was voluntary or not must be determined by the trier of fact, taking into consideration all the surroundings. Taking the evidence in the present case, we are not able to say that the jury was not warranted in finding from the evidence that the plaintiff voluntarily opened his suit case.

The appellant relies upon *Banfil* v. *Byrd*, 84 So. 227, as being conclusive on the proposition that the appellant did not act voluntarily in opening his suit case for the satisfaction of the police officials. In the Banfil Case the officer had a void warrant, which he exhibited, and we held that he could not defend on the ground that the defendant consented to the search, unless it appeared that the consent was freely given, or that the party had full knowledge of her rights, and that such consent was not given because of the warrant or the official character of the officer; that the citizen is not required to resist an officer to maintain a suit in such cases.

It is quite probable that if the plaintiff, when "requested" by the policemen to let him look into the suit case, had done so because of the official character of the officer and in ignorance of his rights, the court would not hold that it was a voluntary act. However, the plaintiff seems to have been advised of his rights, and refused to permit his

suit case to be opened, and when he was carried to the city hall, if the defendant's theory be true, he voluntarily opened his suit case, when no charge had been preferred against him for having liquors in his possession. The evidence was in such conflict that the court rightly submitted it to the jury.

We see no reversible error in the record, and the judgment is affirmed.

*Affirmed.*