MYERS, J.,
for the Court.
¶ 1. On February 7, 2002, David Benson Reid was indicted for possession of precursor chemicals with the intent to manufacture a controlled substance. Reid was convicted of the charge on February 11, 2003 and was sentenced to serve a term of ten years in the custody of the Mississippi Department of Corrections.
STATEMENT OF FACTS
¶ 2. On October 1, 2001, Officer Jason Tilman of the City of Forest Police Department, went to the residence of David Benson Reid and Toby Reid, located at Langs Mill Road in Scott County, Mississippi, to serve an arrest warrant on Toby. While at the Reid residence, Tilman spotted an unknown male leaving a shed located on the property. During trial, Tilman identified the individual as Reid’s co-defendant, James Robert Putnam. Tilman then entered the shed and discovered “methamphetamine lab materials” and contacted the Mississippi Bureau of Narcotics who in turn, immediately submitted an affidavit for a search warrant to Justice Court Judge Wilbur McCurdy. The requested search warrant was issued and several agents went to the Reid residence to perform the search.
¶ 3. Upon their arrival at the Reid residence, the officers discovered a crude and clandestine methamphetamine laboratory which included various precursor chemicals and other paraphernalia. During their search, the agents discovered Reid hiding under his father’s house, which was located next door. Reid was arrested and charged with possession of precursor chemicals. The laboratory equipment was then disassembled, collected, and submitted to the Mississippi Crime Laboratory for analysis.
¶ 4. On February 7, 2002, the Scott County grand jury indicted Putnam, David Reid, and Toby Reid for possession of precursor chemicals with intent to manufacture a controlled substance in violation of Mississippi Code Annotated § 41-29-313(l)(a)(i) (Rev.2001). Toby Reid was subsequently severed from the case against David Reid and Putnam. Putnam and David Reid’s case was tried on February 10-11, 2003. The jury found Reid guilty of possession of precursor chemicals with intent to manufacture a controlled substance, and he was sentenced to serve a term of ten years in the custody of the Mississippi Department of Corrections, which is to run consecutively to a sentence he is currently serving in Warren County, Mississippi. Aggrieved by the findings of the trial court, Reid appeals, raising the following four issues:
I. WHETHER THE TRIAL COURT HAD JURISDICTION OVER THE MATTER.
II. WHETHER THE INDICTMENT WAS FATALLY DEFECTIVE.
III. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT, REQUEST FOR A PEREMPTORY INSTRUCTION, MOTION FOR A *618 NEW TRIAL, AND WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
IV. WHETHER THE COURT ERRED BY AMENDING TWO OF APPELLANT’S PROPOSED JURY INSTRUCTIONS.
Finding no error, we affirm.
LEGAL ANALYSIS
I. WHETHER THE TRIAL COURT HAD JURISDICTION OVER THE MATTER.
DISCUSSION
¶ 5. Reid’s first assignment of error is that the trial court lacked jurisdiction over the matter, rendering the verdict therefrom a nullity. Reid’s contention arises because of a conflict in testimony by one of the State’s witnesses, Officer Jason Tilman. The testimony which Reid contends demonstrates the court’s lack of jurisdiction is as follows:
Q. Officer Tilman, directing your attention to October 1, 2001, did you have occasion to go with other officers to the residence of defendants David Benson Reid and Toby Reid on Langs Mill Road?
A. Yes, sir, I did.
Q. As I understand it, that’s out of the county; is that correct?
A. Yes, sir, it is.
Reid argues that his conviction was against Mississippi Code Annotated § 99-11-3 (Rev.2002) as well as the prior case law of Mississippi. In further support of his contention, Reid states that convictions in the wrong jurisdiction, or where venue is not proven, must be reversed. Isabel v. State, 101 Miss. 371, 58 So. 1 (1912); Dorsey v. State, 141 Miss. 600, 106 So. 827 (1926).
¶ 6. While the testimony quoted above may appear to show that jurisdiction was lacking in this case, a complete review of the record makes it clear that jurisdiction was in fact established and the above referenced testimony was based upon the error of either the prosecutor or the court reporter in stating or typing the word “county” rather than “city.” The applicable portion of Tilman’s testimony establishes that Tilman is a police officer for the City of Forest. As such, Tilman would only have jurisdiction to act within the city limits of Forest, and in order to serve a warrant in Scott County, but outside of the Forest city limits, the aid of a Scott County Sheriffs Deputy would be required. City of Hattiesburg v. Beverly, 123 Miss. 759, 86 So. 590 (1920). The portion of Tilman’s testimony which establishes jurisdiction is as follows:
Q. (BY MR. TURNER) Would you tell us your name, please?
A. Jason Tilman.
Q. How are you employed?
A. I work with [the] City of Forest, Police Department.
Q. You’re a police officer there?
A. Yes, sir.
Q. Officer Tilman, directing your attention to October 1, 2001, did you have occasion to go with other officers to the residence of defendants David Benson Reid and Toby Reid on Langs Mill Road?
A. Yes sir, I did.
Q. As I understand it, that’s out of the county; is that correct?
A. Yes sir, it is.
Q. Is that the reason you had the constable and a sheriff s deputy?
A. Yes.
Q. For what reason had y’all gone out there?
A. To attempt to serve a warrant.
*619 Later in the testimony, Tilman testified as follows:
Q. What county and state was this location that you have testified about here today?
A. Scott County.
The record is clear that Tilman and the other officers did not travel outside of the county in an attempt to serve the warrant in question. Tilman unequivocally stated that the location to which they traveled was in Scott County. This statement is further supported by the testimony of Mississippi Bureau of Narcotics agent, Jimmy Nichols. During the direct examination of Nichols, the prosecutor asked:
Q. And this is located in Scott County, Mississippi; is that correct?
A. Yes, sir, Langs Mill, Scott County.
¶ 7. It is the duty of the defendant to provide authority and support for the issues that are raised on appeal. Rigby v. State, 826 So.2d 694(¶44) (Miss.2002). The record presented on appeal does not establish that any incidents in this case took place outside of Scott County. Rather, when read as a whole, the record is clear that all relevant incidents occurred in Scott County and the original question should have read “As I understand it, that’s out of the [city]; is that correct?”
¶ 8. The testimony of Tilman and Nichols speaks directly to the issue of where the crime took place, and each stated that the crime occurred in Scott County. The testimony is clear that Officer Tilman, a police officer from the City of Forest, Mississippi, was accompanied by a Scott County Sheriffs Deputy when he was present at Langs Mill Road, located in Scott County, for the purpose of serving the arrest warrant in the county, outside the Forest city limits. As such, the trial court could exercise its jurisdiction over the matter, and we find this argument to be without merit.
II. WHETHER THE INDICTMENT WAS FATALLY DEFECTIVE.
STANDARD OF REVIEW
¶ 9. “The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this court.” Peterson v. State, 671 So.2d 647, 652 (Miss.1996).
DISCUSSION
¶ 10. Reid next argues that the indictment under which he was charged was fatally defective, because it did not state, other than in the title of the indictment, the identity of the controlled substance the appellant intended to manufacture from the precursor chemicals. Reid’s argument focuses on the body of the indictment which does not contain the word “methamphetamine.” Reid argues that because the controlled substance, methamphetamine, was not identified in the body of the indictment, he was unable to know what controlled substance he was charged to have had the intent to manufacture.
¶ 11. Mississippi’s case law is very clear that, for an indictment to be deemed valid, it must generally follow the language of the statute. “Generally, an indictment which is substantially in the language of the statute is sufficient.” State v. Labella, 232 So.2d 354, 356 (Miss.1970). “So long as from a fair reading of the indictment, taken as a whole, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient.” Richmond v. State, 751 So.2d 1038, 1046(¶ 19) (Miss.1999) (citing Harrison v. State, 722 So.2d 681, 687 (Miss.1998)).
¶ 12. Mississippi Code Annotated § 41-29-313 (Rev.2001) states as follows:
*620 (l)(a) Except as authorized in this section, it is unlawful for any person to knowingly or intentionally:
(i) Purchase, possess, transfer or distribute any two (2) or more of the listed precursor chemicals or drugs in any amount with the intent to unlawfully manufacture a controlled substance;
(3) The terms “listed precursor drug or chemical” means a precursor drug or chemical that, in addition to legitimate uses, may be used in manufacturing a controlled substance in violation of this chapter. Such term includes any salt, optical isomer or salt of an optical isomer, whenever the existence of such salt, optical isomer or salt of optical isomer is possible within the specific chemical designation. The chemicals or drugs listed in this section are included by whatever official, common, usual, chemical or trade name designated. The following are “listed precursor drugs or chemicals”:
(a) Ether;
(b) Anhydrous ammonia;
(h) Hydrochloric acid;
(n) Sulfuric acid;
¶ 13. The indictment under which Reid was charged was titled “INDICTMENT— Possession of Precursor Chemicals With Intent to Manufacture Methamphetamine.” The indictment further reads as follows:
James Robert Putnam, David Benson Reid and Toby Benson Reid late of the County aforesaid, on or about the 1st day of October, in the year of our Lord, 2001, in the County and State aforesaid, and within the jurisdiction of this Court, did willfully, unlawfully and feloniously have in their possession and under their conscious control precursor chemicals, to-wit: hydrochloric acid, sulfuric acid, ether, and anhydrous ammonia with intent to unlawfully manufacture a controlled substance, in Scott County, Mississippi, contrary to and in violation of Section 41 — 29—313(l)(a)(i), Miss.Code Ann. (1972), against the peace and dignity of the State of Mississippi.
¶ 14. The language of the indictment clearly tracks the language of Miss.Code Ann. § 41 — 29—313(l)(a)(i), which conforms to the precedent in Mississippi stating that the indictment should track the statute in order to be valid. Labella, 232 So.2d at 356. As such, Reid cannot say that he was not informed of the charges against him. Richmond, 751 So.2d at 1046. Therefore, we find this issue to be without merit.
III. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT, REQUEST FOR A PEREMPTORY INSTRUCTION, MOTION FOR A NEW TRIAL, AND WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
STANDARD OF REVIEW
Challenges to the sufficiency of the evidence (raised by motions for directed verdict and for JNOV) and challenges to the weight of the evidence (raised by motions for a new trial) raise similar issues. This Court has set forth the standards for the challenges to the former as follows: Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonable drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary *621 verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Cousar v. State, 855 So.2d 993, 998(¶ 14) (Miss.2003) (citing Pruitt v. State, 807 So.2d 1236, 1242 (Miss.2002)).
This Court’s standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows: In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.
Cousar, 855 So.2d at 998(¶ 15) (citations omitted).
DISCUSSION
¶ 15. Reid’s next argument raises two points. First, Reid contends that the State failed to prove beyond a reasonable doubt that the chemicals seized were in fact the chemicals listed in the indictment. Secondly, Reid argues that the State failed to prove that he was in possession of all four precursors named in the indictment. Reid contends that because of the State’s alleged failure to prove these matters, the trial court erred by failing to grant a directed verdict, by denying his request for a peremptory instruction, and by denying his motion for a new trial. Reid also argues that the State’s alleged failure to prove each element of the crime indicates that the jury’s verdict was against the overwhelming weight of the evidence.
¶ 16. In his first subargument, Reid argues that the State failed to prove beyond a reasonable doubt that the chemicals which were found during his arrest were of the actual chemical makeup of those precursor chemicals which he was charged with possessing. In an effort to avoid confusion, each precursor chemical will be addressed individually.

Hydrochloric Acid

¶ 17. Reid first asserts that the chemical compound of hydrochloric acid for which he was charged was not proved beyond a reasonable doubt to be of the chemical makeup of hydrochloric acid. In support of this contention, he cites the testimony of the State’s chemical analysis expert, who testified that the compounds found in a glass jar were shown by tests to be sodium chloride, i.e. table salt, and hydrochloric acid. On cross-examination, this witness testified that, at the time of testing, the State did not have the capability to separate the two chemicals and positively identify them individually but that the chemical seized tested as hydrochloric acid and sodium chloride. When pressed on the issue of the ability of the State to separate the chemicals for identification, the State’s witness further testified that the mixture had the “characteristic [acidic] vapors [and] odor” of hydrochloric acid. The State’s expert further stated that “with all of the experience I have no doubt that it’s hydrochloric acid present.”

Ether

¶ 18. The State’s expert testified that the State was unable to give as thorough of an identification of ether in 2001, when the analysis was performed, compared to *622 the State’s abilities at the time of trial. She further testified that by reviewing the spectral data, the tested liquid contained ethel ether, hexanes, heptanes, and other petroleum products which are consistent with ether used as starting fluid. On cross-examination the expert stated that “ether-like solvent” is an accurate statement and that the chemical tested was consistent with starting fluid.

Anhydrous Ammonia

¶ 19. At trial, the State’s expert testified that the chemical compound she tested from a tank seized at Reid’s residence contained ammonium hydroxide, which is created by combining anhydrous ammonia with water. The expert testified that when anhydrous ammonia is seized, it is passed through water to change the chemical makeup of the substance, which decreases its volatility. On cross-examination, defense counsel posed a loaded question to the expert in an effort to impeach her credibility and create a reasonable doubt. The question posed was worded as follows:
Q. What I’m trying to get at is, can you positively identify the substance in this ammonium hydroxide and [sic] [as] anhydrous ammonia?
A. No sir, I cannot.
The expert on re-direct examination testified that the only way that the Mississippi Crime Lab comes into contact with anhydrous ammonia is in the form of ammonium hydroxide because of the chemical’s instability without the addition of water.
¶ 20. With regards to the anhydrous ammonia seized at Reid’s residence, Reid argues that the ammonia was actually located on his neighbor’s property, under a water tower. The testimony and exhibits presented at trial were sufficient for a fair-minded juror to determine that Reid had constructive or actual possession over the water tower where the ammonia was located and over the anhydrous ammonia itself. Testimony and exhibits demonstrated that Reid’s residence was in a rural location, with only his house and his father’s house near the water tower. Reid’s father testified “[t]here’s not another residence anywhere close to it.”
¶ 21. The testimony presented by the witnesses must be weighed by the jury. “Absent some indication that there has been a substantial miscarriage of justice, once the jury has spoken on what credibility and weight it will assign to the witnesses, the trial court, and this Court on appeal, may not intercede.” Little v. State, 744 So.2d 339, 342-43(¶ 11) (Miss.Ct. App.1999) (citing Allison v. State, 724 So.2d 1014, 1019(¶ 16) (Miss.Ct.App.1998)). As the jury determined that the credibility of the State’s expert was to be accorded substantial weight, and determining that such a finding is reasonable, it is beyond the authority of this Court to disturb such a finding. The jury’s verdict is supported by the record and it cannot be stated that an unconscionable injustice has occurred, nor can it be stated that the trial judge abused his discretion in failing to grant Reid’s motion for a new trial, as the verdict was not against the overwhelming weight of the evidence. Therefore, we find this issue is without merit.
¶ 22. In Reid’s second subargument he contends that the State failed to prove that he was in possession of all four precursors named in the indictment. Reid’s argument is founded upon the theory that one of the precursors was not located on Reid’s property, but rather on his neighbor’s property. Reid argues that because it was alleged in the indictment that he was in possession of four precursor chemicals, all four precursor chemicals must be proven. In arguing this assignment of error, Reid cites this Court to the same authority and *623 makes the same argument as presented in his fourth assignment of error. Therefore, to avoid repetition, we will address this subargument in our discussion of issue IV below.
IV. WHETHER THE COURT ERRED BY AMENDING TWO OF APPELLANT’S PROPOSED JURY INSTRUCTIONS.
STANDARD OF REVIEW
¶ 23. “Our standard of reviewing a judge’s decision concerning jury instructions is as follows: In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole.” Conners v. State, 822 So.2d 290, 292(¶ 5) (Miss.Ct.App.2001). “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id.
DISCUSSION
¶ 24. Reid contends that jury instructions D-7 and D-8, as given, were improper because they failed to list all four precursor chemicals that were listed in the indictment. In the indictment, the precursor chemicals which Reid was charged to have possessed were hydrochloric acid, sulfuric acid, ether, and anhydrous ammonia, each of which are precursor chemicals as defined by Mississippi Code Annotated § 41-29-313(3). Reid argues that since he was charged with possession of all four chemicals in the indictment, the State is required to prove beyond a reasonable doubt that he indeed possessed all four chemicals.
¶ 25. Mississippi Code Annotated § 41-29-313(l)(a)(i) states as follows:
(l)(a) Except as authorized in this section, it is unlawful for any person to knowingly or intentionally:
(i) Purchase, possess, transfer or distribute any two (2) or more of the listed precursor chemicals or drugs in any amount with the intent to unlawfully manufacture a controlled substance;
(emphasis added).
Reid argues that all four precursor chemicals listed in the indictment must be proved by the State, which essentially ignores the statutory language of Mississippi Code Annotated § 41 — 29—313(1)(a)(i). In support of his contention, Reid cites this Court to Rushing v. State, 753 So.2d 1136 (Miss.Ct.App.2000) in which this Court cited prior opinions of the Mississippi Supreme Court holding that “[t]he prosecution is held strictly to prove the allegations of the indictment and may not vary from the proof of those allegations unless the variance is a lesser-included-offense.” Id. at 1146(¶ 45) (citing Clark v. State, 181 Miss. 455, 461, 180 So. 602, 603 (1938)).
¶ 26. While the Rushing decision did hold that the State is held strictly to prove the allegations of the indictment without variance, the Rushing decision is easily distinguished from the case sub judice. In the Rushing decision, the trial court indirectly amended the indictment by substituting elements contained in two different subsections of Mississippi Code Annotated § 97-3-7 (Rev.2000). By improperly substituting the “serious bodily injury” element of Miss.Code Ann. § 97-3-7(2)(a) with the “deadly weapon” element of Miss. Code Ann. § 97 — 3—7(2)(b), the jury instruction effectively melded together the elements of two separate statutes, improperly allowing the State to prove its case.
¶ 27. In the present case, the indictment against Reid was not effectively amended by the amendment to the jury instruction. Rather, the jury instruction followed the statutory language of Miss. Code Ann. § 41-29-313(l)(a)(i). The Mis *624 sissippi Supreme Court has stated previously that “[a]t trial, the jury should be instructed in language that tracks the indictment.” Duplantis v. State, 708 So.2d 1327, 1344(¶ 75) (Miss.1998) (citing Doss v. State, 703 So.2d 864 (Miss.1997); Berry v. State, 575 So.2d 1, 13 (Miss.1990)).
¶ 28. The instruction which was read to the jury is as follows:
Hydrochloric acid, sulfuric acid, ether and anhydrous ammonia are precursor chemicals. The possession of two or more precursor chemicals with intent to manufacture methamphetamine is against the law. If you should find the evidence beyond a reasonable doubt that the defendants possessed two or more of the above precursor chemicals with intent to manufacture methamphetamine you should find said defendants guilty as charged.
(emphasis added).
The instruction as given, clearly outlines Miss.Code Ann. § 41-29-313(l)(a)(i) and follows the precedent established in Mississippi stating that a jury should be instructed in language which tracks the indictment. As such, the instruction as given was proper and we find this issue to be without merit.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF THE CONVICTION OF POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE METHAMPHETAMINE AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID TERM TO RUN CONSECUTIVELY WITH THE SENTENCE IMPOSED BY THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.