# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00697-COA

KIMBERLY ANN WHITEHEAD A/K/A                  APPELLANT
KIMBERLEY ANN WHITEHEAD A/K/A
KIMBERLY WHITEHEAD

v.

STATE OF MISSISSIPPI                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2014 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, POSSESSION OF PRECURSORS WITH THE INTENT TO MANUFACTURE A CONTROLLED SUBSTANCE, AND SENTENCED TO TWENTY YEARS WITH TEN YEARS SUSPENDED AND TEN YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION; AND COUNT II, POSSESSION OF BETWEEN .1 GRAM AND TWO GRAMS OF METHAMPHETAMINE, AND SENTENCED TO EIGHT YEARS, WITH THREE YEARS SUSPENDED AND FIVE YEARS TO SERVE, FOLLOWED BY THREE YEARS OF POSTRELEASE SUPERVISION, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |

DISPOSITION:                    AFFIRMED - 04/05/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     A jury sitting before the Warren County Circuit Court found Kimberly Ann Whitehead guilty of possession of pseudoephedrine and ammonium nitrate with the intent to manufacture a controlled substance, and possession of .1 gram or more, but less than two grams, of methamphetamine.  Whitehead appeals and raises four issues: (1) there was insufficient evidence to find her guilty of either charge; (2) the jury's verdicts were contrary to the overwhelming weight of the evidence; (3) the evidence that led to her convictions was seized without a valid consent to search; and (4) two of the jury instructions were inadequate because they failed to list the precursors that she was charged with possessing.  Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     At approximately 8:30 p.m. on October 4, 2012, Investigators Mike Traxler and Stacey Rollison of the Warren County Sheriff's Department responded to a tip that Whitehead was manufacturing methamphetamine at the address where she lived with her eighty-year-old grandmother, Ruby Mills.  Investigator Traxler knocked on the front door while Investigator Rollison watched the back of the mobile home.  Investigator Rollison also watched a shed that was between fifteen and thirty feet from the back door of the mobile

2

home.

¶3.     After Investigator Traxler knocked on the front door, Investigator Rollison heard movement inside the mobile home. According to Investigator Rollison, Whitehead then "opened the back door, and she loudly whispered" something inaudible. Less than a minute later, Whitehead "exited the back door[, and she was] carrying a black, square box in her hands." Whitehead opened the door to the shed and gave the black box to her boyfriend, Shane Hulett. Hulett took the black box into the shed, and Whitehead went back inside the mobile home.

¶4.     Meanwhile, Mills had answered the front door. According to Investigator Traxler, there was a strong odor of ammonia emanating from the mobile home. Investigator Traxler asked to speak to Whitehead, who appeared at the front door a short time later. Whitehead denied that anyone was manufacturing drugs at the house. She later led Investigator Traxler to her and Hulett's bedroom, where Investigator Traxler found "a coffee filter in a box by a nightstand"[1] and a glass pipe.

¶5.     When Investigator Traxler came out of the back door with Whitehead and Mills, Investigator Rollison told him that Hulett was in the shed. Whitehead said she did not own the shed. Hulett also denied that he owned the shed, and he said that he had "just stopped by." However, Mills signed a consent form and gave the investigators permission to search

---

[1] Investigator Traxler later testified that coffee filters are used during the process of manufacturing methamphetamine.

the shed.

¶6.    The black box that Investigator Rollison saw Whitehead carrying was hidden behind a section of pegboard mounted inside the shed.  Among other things such as spoons, a clear plastic bag, a string level, and a bottle wrapped with electrical tape, the black box contained scales disguised as a cell phone, "a coffee filter containing a white powder[y] substance," and a "small, white package" of a substance Investigator Traxler believed to be methamphetamine.  Another plastic bag containing a white powdered substance was on a table in the shed.  The shed also contained lithium batteries and a bucket of opened blister packs of pseudoephedrine tablets.  Hidden behind a part of a wall, Investigator Traxler found a can of Drano and two cans of Coleman fuel.  Next to the shed, the investigators found a blue pitcher under a paddle boat.  Inside the pitcher, there was a glass jar containing a substance that was later identified as "a mixture of methamphetamine, ephedrine or pseudoephedrine, ammonium sulfate, and . . . urea."

¶7.    Whitehead and Hulett were arrested and subsequently charged with possession of pseudoephedrine and ammonium nitrate with the intent to manufacture a controlled substance in violation of Mississippi Code Annotated section 41-29-313(1)(a)(ii) (Rev. 2013).  They were also charged with possession of .1 gram or more but less than two grams of methamphetamine in violation of Mississippi Code Annotated section 41-29-139 (c)(1)(b)(Rev. 2013).  On August 27, 2013, Hulett pled guilty to both charges.[2]

_____

    [2] Consistent with the prosecution's recommendation, the circuit court sentenced Hulett to four years in the custody of Mississippi Department of Corrections for the first charge, with all four years suspended.  For possession of methamphetamine, the circuit court

4

¶8.     On March 28, 2014, Whitehead filed a motion to suppress the evidence seized from the shed. She claimed that "the items seized were pursuant to an illegal search and seizure and should therefore be excluded at trial." Whitehead further argued that "the two written consents to search were not valid." On March 31, 2014, the circuit court conducted a hearing on Whitehead's motion. Mills testified that she did not tell Investigator Traxler that she owned the shed, and she thought that she was only consenting to a search of the mobile home. She also stated that Hulett owned the shed behind her home. However, the circuit court ultimately denied Whitehead's request to suppress the evidence seized from the shed.

¶9.     Whitehead's trial began after the suppression hearing. The prosecution called Investigator Rollison and Investigator Traxler, who testified regarding their involvement. Archie Nichols, a forensic scientist employed by the Mississippi Crime Laboratory, testified that the white powder found on a table inside the shed was ammonium nitrate. Nichols also testified that the white package and coffee filter inside the black box contained 1.1 grams and less than .1 of a gram of methamphetamine, respectively. Finally, Nichols testified that the glass jar inside the blue pitcher contained methamphetamine, pseudoephedrine, and ammonium sulfate. The prosecution's final witness was Jeff Nester, who testified as an expert witness in latent fingerprint examination. Nester, an employee of the Mississippi Crime Laboratory, testified that one of Whitehead's fingerprints was recovered from a can of Coleman fuel.

---

sentenced Hulett to eight years, with three years suspended and five to serve, followed by five years of postrelease supervision.

¶10.   After the prosecution rested its case-in-chief, Whitehead called Hulett as a witness. According to Hulett, Mills and Whitehead were sick on the day that he had cooked the methamphetamine, and they had been asleep for most of the day.  He said Mills and Whitehead had not known that he and Whitehead's cousin cooked the methamphetamine in the shed.  Hulett testified that he owned all of the methamphetamine, paraphernalia, and precursors that were discovered in the mobile home and the shed.  He went on to say that he accidentally left the coffee filter in the bedroom that he shared with Whitehead, and the glass pipe on the bed belonged to him.  Hulett claimed that Investigator Rollison had merely seen Whitehead go outside to tell him that she had put dinner in the oven, and she later brought him a wooden box that contained drill bits and items that he needed to fix a telescope.  He said that Whitehead had not brought him the black box that was discovered behind the pegboard in the shed.  Whitehead also chose to testify.  She corroborated Hulett's claim that she knew nothing about the methamphetamine or precursors that the investigators found.

¶11.   The prosecution finally rested without calling any rebuttal witnesses.  Notwithstanding Hulett's and Whitehead's testimonies, the jury found Whitehead guilty of both charges. Following her unsuccessful posttrial motion for a judgment notwithstanding the verdict or a new trial, Whitehead appeals.

## DISCUSSION

### I.    Sufficiency of the Evidence

¶12.   Whitehead claims there was insufficient evidence to find her guilty of either charge. In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [that the accused committed] the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 61 So. 3d 887, 893 (¶24) (Miss. 2011) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). All credible evidence consistent with the defendant's guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence. *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

¶13. The indictment specifically charged Whitehead with possession of pseudoephedrine and ammonium nitrate with the intent to manufacture a controlled substance, and possession of .1 gram or more, but less than two grams, of methamphetamine. Pseudoephedrine was recovered from a glass jar under a paddle boat next to the shed. Ammonium nitrate was found on a table in the shed. Slightly more than 1.1 grams of methamphetamine was discovered in the black box in the shed. Investigator Rollison testified that she saw Whitehead give the black box to Hulett. However, there was no direct evidence that Whitehead possessed pseudoephedrine or ammonium nitrate. Thus, the prosecution's case regarding the precursors relied on constructive possession.

¶14. For a conviction of possession of a controlled substance to stand, "there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011) (citations omitted). "Constructive possession may be shown by establishing that the drug involved was subject

7

to his dominion or control. Proximity is usually an essential element, but by itself it is not adequate in the absence of other incriminating circumstances." *Floyd v. State*, 155 So. 3d 883, 889 (¶15) (Miss. Ct. App. 2014).

¶15. "[W]here contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband." *Mosley v. State*, 89 So. 3d 41, 49 (¶27) (Miss. Ct. App. 2011) (quoting *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978)). "[A]bsent some competent evidence connecting [the accused to] the contraband," he or she "is entitled to acquittal." *Id*. "Mere association with the person who physically possessed the controlled substance is insufficient." *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007) (citing *Vickery v. State*, 535 So. 2d 1371, 1379 (Miss. 1988)). Additionally, while the presence of "paraphernalia might be probative as circumstantial evidence of intent to distribute, . . . [the supreme court has found that it is not] probative as to the issue of constructive possession." *Martin v. State*, 804 So. 2d 967, 970 (¶12) (Miss. 2001).

¶16. In *Kerns v. State*, 923 So. 2d 196, 201 (¶16) (Miss. 2005), the supreme court reversed this Court's judgment reversing convictions for possessing precursors with the intent to manufacture a controlled substance and possession of methamphetamine. The supreme court upheld the convictions based on constructive possession under the following circumstances:

> Not only was [the accused] present at an operating methamphetamine laboratory which smelled strongly of ether; he was within two feet of methamphetamine oil, surrounded by the necessary precursor chemicals for both creating methamphetamine oil and converting it into crystal methamphetamine, . . . and in close proximity to tin foil and coffee filters

8

which tested positive for methamphetamine. Furthermore, . . . [the accused] was continually at the premises which housed the methamphetamine laboratory, had purchased anhydrous ammonia as late as two days before his arrest, and was involved in the manufacture of crystal methamphetamine. This evidence soars above and beyond mere presence, and conclusively establishes constructive possession.

*Id*. at (¶15).

¶17. Here, the undisputed evidence was that Whitehead and Hulett lived in Mills's mobile home. Both investigators testified that there was a strong chemical odor coming from the area. The pseudoephedrine was discovered outside the shed and the ammonium nitrate was inside the shed located immediately behind the mobile home. The shed also contained a number of other precursor chemicals. Immediately after Investigator Traxler knocked on the door, Whitehead was seen handing a black box to Hulett, who was inside the shed. The black box contained slightly more than 1.1 gram of methamphetamine. Although Hulett took sole responsibility for all of the methamphetamine, precursors, and paraphernalia that was discovered, the jury chose not to believe him. "The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed." *Craig v. State*, 777 So. 2d 677, 680 (¶11) (Miss. Ct. App. 2000). Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence to support both of Whitehead's convictions. Accordingly, we find no merit to this issue.

## II.     Weight of the Evidence

¶18. Next, Whitehead claims that both of the jury's verdicts were contrary to the

9

overwhelming weight of the evidence. An appellate court will only disturb a verdict based on the weight of the evidence "when [the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). As we review this issue, we weigh the evidence in the light most favorable to the verdict. *Id.*

¶19. For the reasons expressed in the previous issue, we find that the verdicts are not so contrary to the overwhelming weight of the evidence that it would sanction an unconscionable injustice to allow them to stand. Viewing the evidence in the light most favorable to the verdict, there was direct evidence that Whitehead actually possessed the methamphetamine in the black box. There was also evidence that Whitehead constructively possessed the pseudoephedrine outside the shed, and the ammonium nitrate inside the shed. The jury simply did not believe Hulett's testimony that he was solely responsible for the crimes. "Factual disputes are properly resolved by a jury and do not mandate a new trial." *Ealey v. State*, 158 So. 3d 283, 293 (¶31) (Miss. 2015). Accordingly, this issue is without merit.

### III. Motion to Suppress

¶20. The circuit court denied Whitehead's motion to suppress the evidence recovered from the shed based on the conclusion that she lacked standing to object. Whitehead claims the circuit court erred. According to Whitehead, Mills lacked authority to consent to a search of the shed because Mills testified that she did not own it. Whitehead also notes Mills's testimony that she thought she was only consenting to a search of the home. We are mindful

10

that "[i]n reviewing the denial of a motion to suppress, [an appellate court] must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence." *Moore v. State*, 933 So. 2d 910, 914 (¶9) (Miss. 2006). If they are, we "shall not disturb those findings." *Id.* "The standard of review in Mississippi for questions of law is de novo." *Farris v. State*, 764 So. 2d 411, 428 (¶57) (Miss. 2000).

¶21. The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution provide that an individual has the right to be free from unreasonable searches and seizures. *Dies v. State*, 926 So. 2d 910, 917-18 (¶21) (Miss. 2006). However, "Fourth Amendment rights are personal rights and may not be asserted vicariously." *Waldrop v. State*, 544 So. 2d 834, 837 (Miss. 1989). "[I]f a person denies ownership or possession of property, he later has no standing to complain that the search of it was unlawful." *Id.*

¶22. Mills and Investigator Traxler testified during the suppression hearing. Mills consistently referred to the mobile home as "[her] trailer." On cross-examination, she testified that she had been renting the mobile home for approximately ten years, and the shed had been behind it for "[a]bout four months." Mills also testified that she had gone out to the shed at times. Although she had seen Whitehead go out to the shed, she clarified that she had not seen her in the shed on the day the investigators were there. She also said that the shed belonged to Hulett, and she thought she was only consenting to a search of the home. However, the consent form that she signed clearly states that she was consenting to a search of the shed. Mills claimed that she did not read the consent form because she was not

11

wearing her glasses.

¶23. Investigator Traxler testified that when he asked for consent to search the shed, Whitehead and Hulett both said the shed did not belong to them. However, Mills said that the house and property belonged to her. Investigator Traxler testified that he specifically asked Mills if the shed belonged to her, and he read the consent form to her before she signed it. He also told Mills that she had the right to refuse to consent, but she said, "I'm not refusing. You can go look." Investigator Traxler added that they "were sitting on the back steps of the trailer outside the manufactured home, looking at the shed," when Mills signed the consent form, and Mills understood the difference between the shed and the mobile home.

¶24. There was substantial evidence that Whitehead denied having any rights to the shed. Having done so, she had no standing to complain that the search of the shed was unlawful based on her claim that Mills lacked authority to consent to the search. *See Waldrop*, 544 So. 2d at 837. Furthermore, because of Mills's interest in the home, she also had the right to consent to a search of the curtilage surrounding it. *See Arnett v. State*, 532 So. 2d 1003, 1008 (Miss. 1988). "The curtilage of a dwelling is a space necessary and convenient, habitually used for family purposes and for the carrying on of domestic employment; it is the yard, garden or field which is near to and used in connection with the dwelling." *Jordan v. State*, 728 So. 2d 1088, 1095-96 (¶33) (Miss. 1998). The undisputed testimony was that the door to the shed faced the back door of the home, and the shed was approximately fifteen to thirty feet from the home. It would be reasonable to consider the shed as part of the curtilage of

12

the home, and it follows that Mills had the authority to consent to a search of the shed. Because the circuit court's decision was supported by substantial evidence, we find that this issue lacks merit.

### IV. Jury Instructions

¶25. Finally, Whitehead claims the circuit court erred when it gave two of the prosecution's jury instructions. Whitehead notes that she was specifically charged with possession of pseudoephedrine and ammonium nitrate with the intent to manufacture a controlled substance. According to Whitehead, because jury instructions S-4 and S-5 improperly referred to "two or more" precursors without specifically listing the precursors that she allegedly possessed, the circuit court failed to properly instruct the jury.

¶26. To determine whether the circuit court erred in giving the instructions at issue, we read all of the instructions as a whole. *Reid v. State*, 910 So. 2d 615, 623 (¶23) (Miss. Ct. App. 2005). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id*. Additionally, "the prosecution is held strictly to prove the allegations of the indictment and may not vary from the proof of those allegations . . . ." *Id*. at (¶25).

¶27. Whitehead is correct that instructions S-4 and S-5 did not specifically state that the jury must find that she possessed pseudoephedrine and ammonium nitrate with the intent to manufacture a controlled substance. Instruction S-4 stated:

> The [c]ourt instructs the [j]ury that in determining the issue of whether . . . Whitehead[] possessed two or more precursors with the intent to unlawfully manufacture methamphetamine, the jury may consider, along with all of the

13

other evidence, any direct evidence of possession of methamphetamine, as well as any other evidence, if any, of said precursors with intent to manufacture methamphetamine by the defendant, including the conduct of the defendant at the time of the incident together with all of the other matters, facts and circumstances surrounding the incident, giving to all of such evidence the weight, worth and credibility that you, as a jury, feel it deserves, applying to all of the evidence your common sense and sound, honest judgment.

And the pertinent part of instruction S-5 informed the jury of the form of its verdict based on whether it had found Whitehead "guilty of [p]ossession of [p]recursor [s]ubstances with [i]ntent to [m]anufacture [m]ethamphetamine . . . ."

¶28. However, instruction S-1A stated:

The [c]ourt instructs the [j]ury that if you believe from the evidence in this case, beyond a reasonable doubt, that . . . Whitehead, on or about October 4, 2012, in Warren County, Mississippi, did:

1. willfully, unlawfully, knowingly, and feloniously;

2. possess two or more precursor chemicals, to wit; *pseudoephedrine and ammonium nitrate*[;]

3. with intent to manufacture a controlled substance, methamphetamine[;]

then and in that event, the defendant, Kimberly Whitehead, is guilty of possession of precursor substances and it is your sworn duty to so find.

The [c]ourt further instructs the [j]ury that if the State fails to prove any of the above elements, beyond a reasonable doubt, then in that event you must find the defendant, Kimberly Whitehead, not guilty.

(Emphasis added). And instruction S-3A stated:

Pseudoephedrine and [a]mmonium [n]itrate are precursor chemicals. The possession of precursor chemicals with intent to manufacture methamphetamine is against the law. If you should find from the evidence, beyond a reasonable doubt[,] that [Whitehead] possessed the above precursor chemicals with intent to manufacture methamphetamine[,] you should find

14

[Whitehead] guilty as charged.

¶29. To summarize, instructions S-1A and S-3A both specifically stated that to convict Whitehead, the jury was required to find beyond a reasonable doubt that she possessed pseudoephedrine and ammonium nitrate with the intent to manufacture methamphetamine. Therefore, when read together as a whole, the jury instructions were adequate regarding the elements of the offense charged in the indictment, and Whitehead suffered no prejudice because instructions S-4 and S-5 omitted the precursors specified in the indictment. Consequently, this issue is meritless.

¶30. **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, POSSESSION OF PRECURSORS WITH THE INTENT TO MANUFACTURE A CONTROLLED SUBSTANCE, AND SENTENCE OF TWENTY YEARS, WITH TEN YEARS SUSPENDED AND TEN YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION; AND COUNT II, POSSESSION OF BETWEEN .1 GRAM AND TWO GRAMS OF METHAMPHETAMINE AND SENTENCE OF EIGHT YEARS, WITH THREE YEARS SUSPENDED AND FIVE YEARS TO SERVE, FOLLOWED BY THREE YEARS OF POSTRELEASE SUPERVISION, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES AND GREENLEE, JJ., NOT PARTICIPATING.**