CHANDLER, J.,
 

 for the Court.
 

 ¶ 1. William Presley Brown II was convicted of murder and sentenced by the Warren County Circuit Court to life imprisonment in the custody of the Mississippi Department of Corrections. He appeals this conviction, arguing that: (1) his Fourth Amendment rights were violated when officers unlawfully seized his vehicle without probable cause, and (2) the trial court erred in not granting his circumstantial-evidence and accessory-after-the-fact jury instructions. We find that neither of these arguments has merit. Therefore, we affirm his conviction and sentence.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the evening of October 15, 2005, Vicksburg police responded to a report of a dead female lying face down next to a garbage dumpster at the Vicksburg Hotel, an apartment complex in downtown Vicksburg. Officers later identified the deceased woman as Chenara Young and determined that she had died as the result of blunt force trauma. Officer Billy Brown and Sergeant Virgil Woodall also concluded that Young had been moved to the location due to the presence of blood smears and the lack of blood pooling near the body. They suspected that a vehicle had been used in moving the body due to Young’s weight, which was later determined to be in excess of three hundred pounds.
 

 ¶ 3. At approximately 2:20 a.m. on the morning of October 16, 2005 (eight hours after the discovery of Young’s body), Officer Daniel Thomas responded to a complaint of a suspicious truck that was parked across from a sports bar where another car usually parked.
 
 [1]
 
 Officer Thomas observed what appeared to be a bloody smear and drip marks on the tailgate and in the bed of the truck. The driver’s side front-seat cover had been removed, and there was a large red stain on the Styrofoam padding of the seat. The seat cover was bundled up in the truck’s bed. The truck was located less than two blocks from the location where Young’s body was found. Sergeant Woodall was called to the scene and determined that the substance
 
 *88
 
 could possibly be blood. Based on the truck’s proximity to the crime scene, the substance located on the truck, the stain on the driver’s seat, the suspicion that a vehicle was used in the crime, and the absence of the truck’s owner, the officers had the truck towed half a block away to the city’s impound lot to be secured until further tests could be done and a search warrant could be obtained. No tests were done at the truck’s original location to determine if the substance was blood.
 

 ¶ 4. The next morning, a group of investigators did a presumptive blood test and determined that the substance on the truck’s tailgate was, in fact, blood. Then, they obtained a search warrant for the vehicle.
 
 [2]
 
 Inside the vehicle, they found a wallet belonging to the defendant, Brown. The truck was titled in another individual’s name without any evidence that it had been signed over to Brown. Through the course of their investigation, officers were able to determine that Brown lived at the Vicksburg Hotel, and they obtained a search warrant for his apartment. Upon execution of the search warrant, officers discovered blood stains and spatters on the living room carpet and walls, bloody clothing and pillows in the living room, human feces on the living room carpet, bloody clothes and shoes in the bedroom closet, and blood in the bedroom and bathtub. The blood was later analyzed and determined to be the Young’s blood.
 

 ¶ 5. An arrest warrant was issued for Brown and he was taken into custody. After waiving his
 
 Miranda
 
 rights, he gave two videotaped statements. In those statements, Brown gave the following story. In the predawn hours of October 14, Brown went to a nearby convenience store where he was approached in the parking lot by Young, whom he did not know. She propositioned him to exchange sex for money. He declined the offer, but they decided to go back to his apartment and smoke crack. The two were joined by another man who is only referenced in the record as “the man with the crooked eye.” The trio went to purchase crack. Then, they proceeded to Brown’s apartment to smoke it. According to Brown, Young and the man with the crooked eye got into an argument over the drugs, and the man with the crooked eye picked up Brown’s baseball bat and began beating Young. Brown went to the kitchen to get a knife. When he got back to the living room, the man with the crooked eye was gone. Brown told Young to leave, but she was unable to do so due to the seriousness of her injuries. Some time later, Young died. Instead of calling authorities, Brown attempted to dispose of Young’s body by dragging it to the service elevator and ultimately dumping it in the parking lot. Brown explained that Young was found partially nude because he and she were going to engage in sexual activity at some point, but never did.
 
 [3]
 
 Brown also told officers that he parked his truck nearly two blocks away from the Vicksburg Hotel after he saw the officers investigating Young’s dead body in the parking lot.
 

 ¶ 6. Brown was subsequently tried and convicted by a jury in the Warren County Circuit Court for the murder of Young. He appeals that conviction alleging that: (1) his Fourth Amendment rights were violated when officers unlawfully seized his vehicle without probable cause, and (2) the trial court erred in not granting his circumstantial-evidence and accessory-after-the-fact jury instructions.
 

 
 *89
 
 ANALYSIS
 

 I. WHETHER BROWN’S FOURTH AMENDMENT RIGHTS WERE VIOLATED WHEN OFFICERS IMPOUNDED HIS VEHICLE WITHOUT A WARRANT.
 

 A Standing
 

 ¶ 7. As a threshold matter, the State renews its argument that Brown lacks standing to challenge the seizure of the truck on Fourth Amendment grounds because no evidence was presented at the suppression hearing regarding the issue of ownership. Whether a defendant has standing to challenge a seizure is a question of law; therefore, we address this issue de novo.
 
 United States v. Kye Soo Lee,
 
 898 F.2d 1034, 1037 (5th Cir.1990). “The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.”
 
 Lyons v. State,
 
 942 So.2d 247, 250(¶ 11) (Miss.Ct.App.2006) (quoting
 
 Rakas v. Illinois,
 
 439 U.S. 128, 132 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). “[T]he question of whether a defendant can claim the protection of the [F]ourth [A]mendment hinges ‘not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.’ ”
 
 Lee,
 
 898 F.2d at 1038 (quoting
 
 Rakas,
 
 439 U.S. at 143, 99 S.Ct. 421).
 

 ¶ 8. The Fifth Circuit Court of Appeals has stated that when a person has borrowed an automobile from another, with the other’s consent, the borrower becomes a lawful possessor of the vehicle and has standing to challenge its search.
 
 Id.
 
 We have no direct evidence in the trial record about whether Brown was lawfully in possession of the truck. But, the State never presented any evidence that he was not in lawful possession of the vehicle. Therefore, there is no indication from the record that Brown lacked standing.
 

 B. Standard of Review
 

 ¶ 9. Brown argues that the officers seized his truck without probable cause; therefore, all evidence that derived from the seizure was inadmissible as the “fruit of the poisonous tree.” The analysis of whether there has been an unlawful seizure is subject to a mixed standard of review.
 
 Dies v. State,
 
 926 So.2d 910, 917(¶ 20) (Miss.2006). The determination of the existence of probable cause is reviewed de novo.
 
 Id.
 
 (citing
 
 Ornelas v. United States,
 
 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). However, that de novo review is limited to the “trial judge’s decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.”
 
 Id.
 
 (citing
 
 Floyd v. City of Crystal Springs,
 
 749 So.2d 110, 113(¶ 11) (Miss.1999)). The basic elements of “a determination of ... probable cause will be the events which occurred leading up to the ... search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount ... to probable cause.”
 
 Ornelas,
 
 517 U.S. at 696, 116 S.Ct. 1657. “In determining whether evidence should be suppressed, a trial court’s findings of fact are not disturbed on appeal absent a finding that the ‘trial judge applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence.’ ”
 
 Clair v. State,
 
 845 So.2d 733, 734-35(¶4) (Miss.Ct.App.2003) (quoting
 
 Taylor v. State,
 
 733 So.2d 251, 255(¶ 18) (Miss.1999)).
 

 C. The Alleged Fourth Amendment Violation
 

 ¶ 10. The United States Supreme Court has stated that “where probable cause exists, a warrantless examination of
 
 *90
 
 the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments.”
 
 Cardwell v. Lewis,
 
 417 U.S. 583, 592, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). In
 
 Cardwell,
 
 the Supreme Court found that no significant expectation of privacy was infringed by a search limited to an examination of the vehicle’s tire and the taking of paint scrapings from the exterior of the vehicle.
 
 Id.
 
 at 591, 94 S.Ct. 2464. The Supreme Court stated that “the invasion of privacy, ‘if it can be said to exist, is abstract and theoretical.’ ”
 
 Cardwell,
 
 417 U.S. at 592, 94 S.Ct. 2464 (quoting
 
 Air Pollution Variance Bd. v. W. Alfalfa Corp.,
 
 416 U.S. 861, 865, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974)). This is because when a person knowingly exposes something to the public, that object is not given Fourth Amendment protection.
 
 Katz v. United States,
 
 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
 

 ¶ 11. A somewhat different situation is presented when police seize a vehicle by transporting it to a secure location before searching its exterior. The United States Supreme Court has addressed this situation as well, holding that the seizure of a vehicle followed by a search of the exterior was permissible because the police had probable cause for the search.
 
 Cardwell,
 
 417 U.S. at 592, 94 S.Ct. 2464. The Supreme Court stated that the fact that “police impounded the car prior to the examination, which they could have made on the spot,” does not create “a constitutional barrier to the use of the evidence obtained thereby.”
 
 Id.
 
 at 593, 94 S.Ct. 2464. The Supreme Court’s analysis highlighted the special status that automobiles occupy under the Fourth Amendment, stating: “[T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable.”
 
 Id.
 
 at 590, 94 S.Ct. 2464 (quoting
 
 Chambers v. Maroney,
 
 399 U.S. 42, 50-51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). The Supreme Court has also held that if the police have probable cause to believe that the vehicle itself is contraband to a crime, it may be seized from a public place without a warrant.
 
 Florida v. White,
 
 526 U.S. 559, 565-66, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999).
 

 ¶ 12. In
 
 Edlin v. State,
 
 523 So.2d 42, 46 (Miss.1988), an officer investigating the death of a woman killed when her car was run off the road noticed that the front bumper of Edlin’s car was scuffed and scraped and the car’s rear quarter panel had greenish-blue paint on it. Edlin’s vehicle was impounded by the police, and the next day, a search warrant was issued for the vehicle.
 
 Id.
 
 The Mississippi Supreme Court found that the police had probable cause to impound the vehicle pending the issuance of a warrant.
 
 Id.
 
 at 47-48. The vehicle already had been moved once, and there was a danger that the vehicle could be moved or tampered with if left in place.
 
 Id.
 
 at 48. Because there was no warrant-less search of the car’s interior, no important privacy interest was implicated.
 
 Id.
 
 And the impoundment for a single day did not impermissibly interfere with Edlin’s possessory interest in the vehicle.
 
 Id.
 
 The supreme court held that the impoundment was reasonable under the totality of the circumstances.
 
 Id.
 
 (citing
 
 Cardwell,
 
 417 U.S. at 592-93, 94 S.Ct. 2464).
 

 ¶ 13. Based upon this precedent, if probable cause existed to conduct the presumptive blood test at the scene, the officers did not violate Brown’s Fourth Amendment rights when they impounded his truck for that purpose. We turn to whether there was probable cause to impound the truck.
 

 ¶ 14. “[T]he true rule is that if the search and seizure without a warrant are
 
 *91
 
 made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.”
 
 Carroll v. United States,
 
 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Probable cause does not require the same level of specific evidence for every element of an offense as would be needed to support the actual conviction.
 
 Adams v. Williams,
 
 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). However, the officer must entertain more than mere unfounded suspicion that the vehicle contained evidence of a crime.
 
 Dunaway v. New York,
 
 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Probable cause is an objective concept, and a police officer’s subjective belief, no matter how sincere, that he has good cause to seize someone or something does not, in and of itself, constitute probable cause.
 
 Beck v. Ohio,
 
 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
 

 ¶ 15. Probable cause must be based upon the totality of the circumstances.
 
 Maryland v. Pringle,
 
 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). The supreme court has further defined probable cause as follows:
 

 a practical, nontechnical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians act. It arises when the facts and circumstances within an officer’s knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
 

 Conway v. State,
 
 397 So.2d 1095, 1098 (Miss.1980) (quoting
 
 Strode v. State,
 
 231 So.2d 779, 782 (Miss.1970)).
 

 ¶ 16. We review the facts and circumstances that led to the impoundment of the truck to determine if the facts, when viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. The following facts were adduced at the suppression hearing. Police officers were called to investigate the death of a woman, Young, whose body was found near a dumpster at the Vicksburg Hotel. Young, who weighed over three hundred pounds, had been beaten to death, but no large pools of blood were found near her body. Also, blood smears were found near her body in the parking lot. All of this information led officers to conclude that a vehicle had more than likely been used to transport the body from where Young was killed to the dumpster. Less than eight hours after the discovery of Young’s body, Officer Thomas was asked to check on a suspicious vehicle parked two blocks away from the Vicksburg Hotel. Upon closer inspection of the truck, Officer Thomas observed a substance that appeared to be blood smeared on the tailgate, in the bed, and on the front seat. Officer Brown arrived on the scene, and he also believed the substance was blood. Officer Thomas contacted his superior, Sergeant Woodall, who believed that, based on his twenty-four years of experience as a police officer, the substance on and in the truck was blood. Thus, the police were confronted with a bloody body that they thought had been moved using a vehicle and, nearby, a suspiciously parked truck with what appeared to be blood on its tailgate, in its bed, and on the front seat. We find these facts were sufficient to justify a person of average caution in the belief that a crime had been committed and that this particular vehicle had been used in its commission.
 

 
 *92
 
 ¶ 17. We conclude from the totality of the circumstances that probable cause existed to impound the truck. There was probable cause to perform the presumptive blood test. The mobility of the truck and its placement on a public street created a danger that the truck would be moved or the substance tainted before testing could be performed. It was, therefore, reasonable for the officers to transport the vehicle to a secure location in anticipation of the presumptive blood test.
 
 See Cardwell,
 
 417 U.S. at 592, 94 S.Ct. 2464. Because the officers had probable cause to impound the truck in order to perform the presumptive blood test, there was no Fourth Amendment violation, and the evidence derived from the impoundment was not subject to exclusion as the “fruit of the poisonous tree.” We affirm the trial court’s denial of Brown’s motion to suppress.
 

 II. WHETHER THE TRIAL JUDGE ERRED IN EXCLUDING THE PROPOSED CIRCUMSTANTIAL-EVIDENCE AND ACCESSORY-AFTER-THE-FACT JURY INSTRUCTIONS.
 

 A. Standard of Review
 

 ¶ 18. When reviewing the denial of a requested jury instruction, “we are required to read and consider all of the jury instructions together as a whole.”
 
 Richardson v. Norfolk S. Ry. Co.,
 
 923 So.2d 1002, 1010(¶ 19) (Miss.2006). The final jury instructions do not have to be perfect, they only have to fairly announce the applicable rule of law.
 
 Milano v. State,
 
 790 So.2d 179, 184(¶ 14) (Miss.2001). There is no reversible error if the jury instructions fairly describe the applicable law pertaining to the case and create no manifest injustice toward the defendant.
 
 Williams v. State,
 
 803 So.2d 1159, 1161(¶ 7) (Miss.2001).
 

 B. Proposed Circumstantial-Evidence Jury Instruction
 

 ¶ 19. During jury instruction deliberations, Brown offered a circumstantial-evidence jury instruction that provided:
 

 The Court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the defendant, then the evidence for the State must be so strong as to establish the guilt of the defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.
 

 This proposed jury instruction was excluded by the trial judge.
 

 ¶ 20. A circumstantial-evidence instruction must only be given when the State does not present direct evidence at the trial in the form of an eyewitness or a confession by the defendant.
 
 Clark v. State,
 
 503 So.2d 277, 279 (Miss.1987) (quoting
 
 Bunkley v. State,
 
 495 So.2d 1, 4 (Miss.1986)). Additionally, an admission by the accused on an important element of the offense obviates the need for a circumstantial-evidence instruction.
 
 Smith v. State,
 
 981 So.2d 1025, 1032(1133) (Miss.Ct.App.2008). “An admission is but a statement by the accused which may be direct or implied by facts pertinent to the issue and tending to prove his guilt.”
 
 Lynch v. State,
 
 877 So.2d 1254, 1266(¶27) (Miss.2004).
 

 ¶ 21. In this case, much of the State’s evidence was circumstantial. The State did not present an eyewitness or a confession. However, the State did present the testimony of Percy Lynch (Percy). Brown visited Percy the morning after Young’s body was found. Percy testified:
 

 And he [Brown] told me, you know, he might have killed somebody. He said, you know, I said, ‘What do you mean you might have killed somebody?” He
 
 *93
 
 said, “Well, we was [sic] at my house and me and this guy got into it and I stabbed him.” I said: “Yeah. Did you call the police?” He said: “no.” And I said: “Well, that’s what you need to do is call the police, if anything happened like that.” And then I said: “Man, are you serious?” He said: “Man, Percy, me and a guy and a girl was [sic] at the house.” And he said the guy and girl got to arguing. I said: “What do you mean, man?” He said that we was [sic] smoking. I said: “Cool.” He said the girl had gave [sic] the guy some dope. The guy wanted some more. The guy got mad and picked up a bat and hit the girl. He said he jumped up, and the guy turned around and said: “I’ll kill you, too.” Said he backed up toward the kitchen. Said the guy was following him, and the lady said something. I guess she must have come to or something, said something. He said the guy turned around, he turned around and grabbed a knife and stabbed him two or three times in the back, and the guy took off running.
 

 In this statement made by Brown to Percy, Brown does not admit that he killed Young, but he does admit to the facts surrounding her death.
 

 ¶ 22. In
 
 Lynch,
 
 877 So.2d at 1260(¶ 1), Lynch was convicted of capital murder with the underlying felony of robbery after Lynch’s accomplice killed someone during a carjacking. Officers asked Lynch if he knew his accomplice was going to carjack someone, and Lynch answered, “I think so. I really don’t know.”
 
 Id.
 
 at 1262(¶ 12). The supreme court found in that case that the statement explained what Lynch thought before the carjacking and subsequent murder.
 
 Id.
 
 at 1266 (¶¶ 27-28). The court also found the statement was an admission because it tended to prove Lynch’s guilt when viewed in connection with the other facts showing Lynch’s involvement in the crime.
 
 Id.
 
 at (¶ 28). Because Lynch’s statement was an admission as to the intent to commit the robbery, which was an underlying element of the ultimate conviction for murder, the supreme court held that the State’s case was not entirely made up of circumstantial evidence.
 
 Id.
 
 at 1266-67(¶ 29).
 

 ¶ 23. Viewed in connection with the other facts showing Brown’s involvement in the crime, Brown’s statements to Percy tend to prove his guilt. Brown admitted that he and Young were at his apartment when the murder occurred, which was corroborated by the large amounts of Young’s blood found all over the apartment. He also testified that Young had been beaten to death by a baseball bat. This testimony was consistent with the type of injuries found on Young’s body. Brown told Percy that there was another man in the apartment and that this man was the person who beat Young to death. However, this version of events was never corroborated because there was no man found in the Vicksburg area with stab wounds, there was no knife found in the building that could have been used in the alleged stabbing, and no blood was found on the door casing except that belonging to Young.
 

 ¶ 24. Brown argues that
 
 Lynch
 
 is distinguishable from this case because Brown first said he thought he killed someone, but then specified that the person he thought he killed was the man with the crooked eye. Thus, Brown argues that he did not admit to an element of the murder of Young, but to an element of the murder of a completely separate person. To determine whether Brown’s statement constituted direct evidence of his guilt, we carefully review the admission at issue in
 
 Lynch.
 
 Lynch was asked by authorities whether he knew his accomplice was going to carjack someone and take the person’s
 
 *94
 
 car.
 
 Id.
 
 at 1262(¶ 12). Lynch’s responsive statement that he thought his accomplice was going to carjack someone did not pertain to the specific victim. Moreover, in
 
 Rubenstein v. State,
 
 941 So.2d 735, 785 (¶ 228) (Miss.2006), the supreme court found that the defendant had admitted to a significant element of capital murder when he admitted to a fellow inmate that he was wanted for shooting his wife, daughter, and daughter’s boyfriend, when in reality he had shot his stepson, stepson’s wife, and stepson’s daughter. Thus, in
 
 Ruben-stein,
 
 an admission to the murder of a different victim was treated as direct evidence of guilt. In this case, Brown admitted that he was at the crime scene and that he might have killed someone. We find that Brown was not entitled to a circumstantial-evidence instruction. This issue is without merit.
 

 C. Proposed Accessory-After-the-Fact Jury Instruction
 

 ¶ 25. During jury instruction deliberations, Brown requested an accessory-after-the-fact jury instruction that provided:
 

 The Court instructs the Jury that if you are unable to arrive at a verdict on the charge of Murder, you may consider whether or not William Presley Brown, II committed the crime of accessory after the fact to Murder.
 

 If you believe, beyond a reasonable doubt, that William Presley Brown, II did on or about October 14, 2005, in Warren County, Mississippi, conceal or aid an [sic] assist another who did Murder, Chenara Young, in an effort for said to person a[sic] avoid arrest, trial[,] conviction or punishment, you may find him guilty of accessory after the fact to murder.
 

 This proposed instruction was denied by the trial judge.
 

 ¶ 26. Accessory after the fact is a separate and distinct crime from murder.
 
 See Dampier v. State,
 
 973 So.2d 221, 231(¶28) (Miss.2008). A defendant may properly “request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment.”
 
 Gangl v. State,
 
 539 So.2d 132, 136 (Miss.1989). However, a lesser-offense instruction should only be granted by the trial judge when an evidentiary basis exists in the record to support such an instruction.
 
 Id.
 
 A lesser-included offense instruction should be granted unless the trial judge can say that no reasonable jury could find the defendant guilty of the lesser offense after taking all evidence in the light most favorable to the accused.
 
 Giles v. State,
 
 650 So.2d 846, 854 (Miss. 1995) (quoting
 
 Harper v. State,
 
 478 So.2d 1017, 1021 (Miss.1985)). Thus, if any evidence is found in the record that could support the finding of the lesser offense, the trial judge should give the lesser-included offense instruction, but if the instruction is not supported by evidence, the instruction should be excluded.
 
 Perry v. State,
 
 637 So.2d 871, 877 (Miss.1994).
 

 ¶ 27. The elements of accessory after the fact are: (1) a felony has been committed; (2) the defendant “concealed, received, or relieved any felon, or having aided or assisted any felon, knowing that such person had committed a felony”; and (3) the defendant intended “to enable such felon to escape or to avoid arrest, trial, conviction or punishment, after the commission of such felony.” Miss.Code Ann. § 97-1-5 (Rev.2006). Brown claims that he inadvertently aided the man with the crooked eye by disposing of the body. Brown also argues that had the man with the crooked eye been caught, Brown would have faced criminal charges based upon his
 
 *95
 
 purchase and possession of crack cocaine on the night of the murder.
 

 ¶ 28. The crime of accessory after the fact requires that the defendant act with the intent to help the felon escape detection. There was no evidence put on at trial that Brown acted with the intent to enable the man with the crooked eye to escape or avoid arrest, trial, conviction, or punishment for the murder of Young. Considering the evidence in the light most favorable to Brown, due to the absence of evidence supporting the intent element, a reasonable jury could not have found Brown guilty as an accessory after the fact. Therefore, Brown was not entitled to an aecessory-after-the-fact jury instruction. This issue is without merit.
 

 CONCLUSION
 

 ¶ 29. For the above reasons, we affirm Brown’s conviction and sentence.
 

 ¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF MURDER AND SENTENCE TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.
 

 [1]
 

 . There is some inconsistency in the record on whether there was a sports bar across from the vehicle or a barber shop.
 

 [2]
 

 . The stain on the driver's seat tested negative for the presence of blood.
 

 [3]
 

 . He later said in his statement that he and Young did engage in sexual activity.