# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01206-COA

**CHRIS SHAWN TULLOS A/K/A CHRIS TULLOS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                     **APPELLEE**

DATE OF JUDGMENT:                08/23/2018
TRIAL JUDGE:                     HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED:       NEWTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY:  LISA L. BLOUNT
DISTRICT ATTORNEY:               STEVEN SIMEON KILGORE
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 12/17/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     On June 1, 2018, a Newton County, Mississippi grand jury indicted Chris Shawn Tullos for one count of possession of methamphetamine.  Key to this case was a small amount of methamphetamine found in a bag that Tullos identified when confronted by two conservation officers on his grandmother's 90-acre property.  Following a jury trial, Tullos was convicted for one count of possession of methamphetamine and sentenced to serve three years in the custody of the Mississippi Department of Corrections.  Tullos filed a motion for a new trial, which the trial court denied.  On appeal, Tullos argues that the conservation

officers violated his Fourth Amendment right when they impermissibly entered onto private property without probable cause or statutory authority. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On September 2, 2017, the opening day of dove-hunting season, Officers Tyler Robinson and Tyler Norman, of the Mississippi Department of Wildlife, Fisheries and Parks, were patrolling the fields and listening for dove hunters. The officers heard shooting from a distance and pulled over to check the circumstances. When they stopped, they heard voices across the highway in a field near the south side of Highway 489. After entering the land, the officers encountered Tullos and Jackie Allen.[1] The officers asked Tullos and Allen to come talk to them. As Tullos and Allen were approaching, Tullos threw a black bag behind a utility pole. When Tullos was asked what was in the bag, he responded "meth." Thereafter, Tullos and Allen were arrested for possession of methamphetamine. On June 1, 2018, a Newton County grand jury indicted Tullos for one count of possession of methamphetamine.

¶3. On August 21, 2018, a trial was held. Officer Robinson testified on behalf of the State. During his direct examination, the defense objected to the admissibility of Tullos's statement on the basis that Tullos was detained and not informed of his *Miranda*[2] rights. Therefore, the defense moved to suppress any statements or evidence that the officers obtained thereafter.

---

[1] Allen is not a party to this appeal.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966). The *Miranda* issue was not raised on appeal.

¶4.     Outside of the presence of the jury, a suppression hearing was held.  During the suppression hearing, Officer Robinson testified that he heard voices and that he did not know whether Tullos and Allen were hunters or not, but he and Officer Tyler Norman were just going to talk to them.  On cross-examination, Officer Robinson testified that he knew it was private property that he entered.  On re-direct examination, Officer Robinson stated that he was simply going to ask Tullos and Allen questions, and they were only detained because Tullos dropped the bag and stated that it contained "meth."

¶5.     Tullos also testified during the suppression hearing.  According to Tullos, he and Allen were on his grandmother's private property looking for an area to set up deer-food plots.  He stated that his grandmother owned the subject property where the officers approached him, which was across the road from his home.  Tullos's counsel offered into evidence a deed of conveyance from Tullos's grandmother to him for his home; Tullos's home was not located where he was found with the meth.  He stated that he was unaware of anyone giving the game wardens permission to be on his grandmother's private property.  Further, he stated that "there was no way that anyone could dove hunt on the property because it is solid rocks."

¶6.     At the close of both counsels' arguments, the court found that Officer Robinson was in a place that he was entitled to be, "he was acting within the course and scope of his law enforcement job," and that no search had occurred.  Therefore, the court overruled Tullos's objection as to the admissibility of the seized methamphetamine.

¶7.     Continuing with the trial, and in the presence of the jury, Officer Robinson resumed

3

his testimony. Officer Robinson testified that Tullos threw a black bag behind the utility pole. He asked Tullos what was in the bag, and Tullos responded "meth." At that point he arrested Tullos and Allen and called the Newton County Sheriff's Department. Deputy Sheriff Sammy Stevens came and took the physical evidence. Deputy Stevens testified that he took the crystal-like substance to the crime lab in Meridian, Mississippi.

¶8. Last, Jamie Johnson, a forensic scientist with the Mississippi Forensics Laboratory, testified on the State's behalf. Johnson stated that the bag Tullos had thrown down contained two smaller plastic bags. Johnson testified that after testing the substances in each bag, one bag did not contain a controlled substance, but the smaller plastic bag contained 0.178 gram of methamphetamine.

¶9. The State rested its case. Then, the defense moved for a directed verdict and renewed the previous objection as to the admissibility of the evidence seized by the officers. The court denied the motion for a directed verdict and again overruled Tullos's objection to the admissibility of the evidence. The defense, calling no witnesses, rested its case.

¶10. On August 23, 2018, Tullos was convicted by a jury of his peers, and the court sentenced him to serve three years in the custody of the Mississippi Department of Corrections. On the same day, Tullos filed a motion for a new trial, arguing, among other things,[3] that the court erred in allowing the illegal search and seizure of the alleged methamphetamine into evidence because it was the fruit of a search that violated his constitutional rights. The court denied that motion. Tullos then filed his notice of appeal.

---

[3] Tullos made four other arguments in his motion for new trial, but he did not pursue them on appeal.

¶11.     The only issue Tullos raises on appeal is that his Fourth Amendment right was violated when the conservation officers impermissibly entered upon private property without probable cause or statutory authority; and therefore, the court erred in denying his motion to suppress the seized evidence.

## STANDARD OF REVIEW

¶12.     We apply a mixed standard of review when reviewing a denial of a motion to suppress evidence based on the Fourth Amendment. *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006). "We apply de novo review when determining whether probable cause or reasonable suspicion exists." *Cole v. State*, 242 So. 3d 31, 37 (¶10) (Miss. 2018). But our de novo review is "limited to the trial court's decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards." *Id.* (internal quotation marks omitted). "Whether a defendant has standing to challenge a seizure is a question of law; therefore, we address this issue de novo." *Brown v. State*, 19 So. 3d 85, 89 (¶7) (Miss. Ct. App. 2008).

## DISCUSSION

¶13.     Tullos argues that the conservation officers violated his Fourth Amendment rights when they impermissibly entered upon private property without probable cause or statutory authority. The State avers that Tullos lacks standing to assert that his Fourth Amendment rights were violated because he does not have a reasonable expectation of privacy on his grandmother's land. We agree with the State.

¶14.     The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures. . . ." Article 3, Section 23 of the Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search. . . ." But "Fourth Amendment rights are personal rights and may not be asserted vicariously." *Whitehead v. State*, 187 So. 3d 1091, 1098 (¶21) (Miss. Ct. App. 2016). "If a person denies ownership or possession of property, he later has no standing to complain that the search of it was unlawful." *Id.* During the suppression hearing, Tullos did just that. Tullos testified that he owned the home across the street and that his grandmother owned the land where the evidence was seized. Tullos testified as follows:

Q. Okay. Now, this exhibit or this that's marked for identification here – and it came unstapled – this is the deed to your property that you live at, right?

A. Yes, sir.

Q. Now, in relation to where this property is, where were you – where were you found?

A. Just right across the ditch. I mean, it's about ten yards across the ditch. I mean, in – across a ditch –

Q. Okay.

A. – on that property.

Q. This property here in Exhibit 1 is south of 489, right?

A. Yes, sir.

Q. And where you were found was north of 489, right?

A. Right.

Q. So it's right across the road?

6

A.    Yeah.

Q.    Now, this deed reflects that it was deeded to you by Juanice Cleveland?

A.    Juanice, yes, sir.

Q.    Juanice Cleveland. I'm sorry.

A.    Yes, sir.

Q.    And who is Ms. Cleveland?

A.    That's my grandmother.

Q.    Okay. And who owns the property directly across the road from Highway 489?

A.    My grandmother.

Q.    Okay. Now, do you live with your grandmother?

A.    Yes, I do. I'm – she's 88 years old, and I'm caretaker of her. Yes, sir.

Q.    Okay. How long have you lived there with your grandmother?

A.    Since I got out of college. Probably since – 23 – 22 years old, 23 years old, since then.

. . . .

¶15.   Notwithstanding Tullos's admission that he did not own the land where the evidence was seized, it has been held that when one does not possess a property right, he or she may claim protections of the Fourth Amendment if he or she has a legitimate expectation of privacy in the invaded place. *Brown*, 19 So. 3d at 89 (¶7). In *Brown*, we held that "the question of whether a defendant can claim the protection of the [F]ourth [A]mendment hinges not upon a property right in the invaded place but upon whether the person who

7

claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Id*. (internal quotation marks omitted). Tullos argues that he had a legitimate expectation of privacy in his grandmother's private property across the road from where he lived. We disagree.

¶16. The United States Supreme Court and our supreme court have held that a person does not have a legitimate expectation of privacy on "open fields" or areas outside the curtilage of a home. *Oliver v. United States*, 466 U.S. 170, 176 (1984); *Jordan v. State*, 728 So. 2d 1088, 1095 (Miss. 1998). In *Oliver*, the officers "drove past the petitioner's house to a locked gate with a 'No Trespassing' sign, but with a footpath around one side." *Oliver*, 466 U.S. at 173. The officers "then walked around the gate and along the road and found a field of marihuana over a mile from petitioner's house." *Id.* The United States Supreme Court held that officers' collecting information on an "open field" was not in violation of the Fourth Amendment. *Id.* at 182. *See also United States v. Jones*, 565 U.S. 400, 411 (2012) ("Quite simply, an open field . . . is not one of those protected areas enumerated in the Fourth Amendment."). Additionally, "[t]he term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage." *United States v. Dunn*, 480 U.S. 294, 304 (1987). Our supreme court has held that "[t]he curtilage of a dwelling is a space necessary and convenient, habitually used for family purposes and for the carrying on of domestic employment; it is the yard, garden or field which is near to and used in connection with the dwelling." *Arnett v. State*, 532 So. 2d 1003, 1008 (Miss. 1988).

¶17. Our supreme court has also outlined four factors to consider when determining

8

whether the area surrounding the structure is considered within the curtilage: (1) "[p]roximity of the area claimed to be curtilaged to the home"; (2) "[w]hether the area is included within an enclosure surrounding the home"; (3) "[t]he nature of the uses to which the area is put"; and (4) "[t]he steps taken by the resident to protect the area from observation by people passing by." *Jordan*, 728 So. 2d at 1095 (¶28). In *Jordan*, the defendant claimed that his Fourth Amendment rights were violated when officers searched and obtained evidence against him from a wooded area, which he claimed was part of the curtilage, behind his mother's trailer. *Id.* at 1095 (¶27). When considering the factors, the court stated that the area was approximately 100 feet from the trailer, and it was difficult to reach. *Id*. at (¶30). There was no evidence that the area was within the enclosure of the home. *Id*. at (¶31). The area resembled a garbage dump, and there was no indication that the area was even occasionally used for family purposes. *Id.* at (¶32). The court noted that the area would not qualify as a yard, garden, or field near to and used in connection with the dwelling. *Id*. at 1095-96 (¶33). There was no evidence of any steps made to protect the area from observation. *Id*. at 1096 (¶34). The court held that the wooded area behind the trailer was not a part of the curtilage of the trailer; therefore, the defendant had no standing to contest the search thereof. *Id*. at (¶35).

¶18. We have held that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Brown*, 19 So. 3d at 89 (¶7). In this case, we find that Tullos failed to meet the burden of establishing that his Fourth Amendment rights were violated. Here, when

considering the factors to determine whether the area surrounding the structure is considered within the curtilage, we find that the area where the evidence was seized was not only an open field, but it was also outside the curtilage, both of which are areas not protected under the Fourth Amendment. The record provides that the evidence was seized on 90 acres of land not owned by him but rather by his grandmother. Tullos testified that his grandmother's land was across the road from his home. There was no evidence that the area was within an enclosure, such as a fence surrounding the home. Tullos testified that the area was used for the purposes of hunting. Additionally, there was no testimony at the suppression hearing concerning any steps made to protect the subject area from observation by people passing by. In light of the testimony at the suppression hearing, we conclude that Tullos did not meet his burden of proof because the area where the evidence was seized was on an open field outside the curtilage of his home. Therefore, we find that Tullos lacks standing to contest the search and that the trial court did not err in admitting the evidence of the seized methamphetamine.

## CONCLUSION

¶19. For the above reasons, we affirm Tullos's conviction and sentence.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**